UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DANIEL F. HAUSCHILD,

                                   Plaintiff,

      - against -

UNITED STATES MARSHALS SERVICE,

                                 Defendant.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-7580 (CS)

Appearances:

Kate M. Swearengen
Matthew E. Stolz
Cohen, Weiss and Simon LLP
New York, New York
*Counsel for Plaintiff*

Christine S. Poscablo
Assistant United States Attorney
New York, New York
*Counsel for Defendant*

Seibel, J.

       Before the Court is the motion to dismiss of Defendant United States Marshals Service

("USMS").  (ECF No. 22.)  For the following reasons, the motion is GRANTED.

## I.  **BACKGROUND**

       I accept as true the facts, but not the conclusions, set forth in Plaintiff's Complaint.  (ECF

No. 1 ("Compl.").)  I incorporate the facts set forth in my June 15, 2018 opinion and order on

Defendant's motion for judgment on the pleadings and Plaintiff's motion for summary judgment.

*See Hauschild v. U.S. Marshals Serv.*, No. 13-CV-5211, 2018 WL 3014095, at *1-3 (S.D.N.Y.

June 15, 2018), *aff'd sub. nom*, *Atterbury v. U.S. Marshals Serv.*, 941 F.3d 56 (2d Cir. 2019).  I

therefore only briefly summarize the events occurring before this lawsuit and provide greater

detail on facts arising since the Second Circuit on October 25, 2019 affirmed my decision to remand this matter to the USMS.

A.  **Factual Background**

Plaintiff, a Court Security Officer ("CSO") employed by Akal Security, Inc. ("Akal"), was assigned to the Poughkeepsie federal courthouse pursuant to a contract between Akal and the USMS.  (Compl. ¶¶ 4, 8, 20.)  He was investigated for possible inappropriate conduct during March through May 2012, and no disciplinary action was taken.  (*Id.* ¶¶ 26-38.)  In July 2012, USMS asked Akal to investigate eleven anonymous allegations made against Plaintiff.  (*Id.* ¶¶ 39, 41.)  Akal substantiated only one of them – that in connection with a plumbing issue, Plaintiff had dispatched a CSO to Bankruptcy Judge Morris's home with Plaintiff's brother, a convicted felon with a history of mental illness – and recommended he be given a time-served suspension (which amounted to about three-and-a-half months) and a final warning.  (*Id.* ¶¶ 42, 49.)  The USMS disagreed and concluded that Plaintiff should be terminated.  (*Id.* ¶¶ 43-46.)  Plaintiff filed suit in this Court on June 24, 2013, and after two trips to the Second Circuit, the upshot was that Plaintiff's claim under § 706(2)(B) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq*, was upheld.  (*Id.* ¶¶ 47-48.)  I concluded, and the Circuit agreed, that the contract between Amal and Plaintiff's union gave Plaintiff a property right in his employment of which he could not be deprived without due process.  *Hauschild*, 2018 WL 3014095, at *10; *Atterbury*, 941 F.3d at 63.  I further found that insufficient process had been afforded to him.  *Hauschild*, 2018 WL 3014095, at *12.  Although Plaintiff had been given notice of the allegations against him, the administrative record did not reveal what conduct on his part led to the decision to terminate him or on what evidence USMS relied.  *Id.* at *11-12, 12 n.7.  I also noted that a full adversary hearing would not necessarily be required, and that if it turned

out, once USMS provided an explanation of the evidence on which it relied, that the decision

was based on facts that were not in dispute, a hearing would serve no purpose.  *Id.* at *12 n.7.

The Circuit affirmed, finding that Plaintiff was entitled to an explanation of the reasons for

USMS's decision, and that "some form of hearing" was required "to the extent that facts were in

dispute."  *Atterbury*, 941 F.3d at 64.[1]  The matter was therefore remanded to USMS for further

administrative proceedings.  *Id.*

On August 19, 2020, USMS provided Plaintiff's attorney with a letter, signed by James

Gurley, Assistant Chief of the Office of Court Security ("OCS"), explaining why it decided to

remove Plaintiff in 2012.  (Compl. ¶ 49; ECF No. 24-1 at 2.)[2]  Gurley highlighted the following

facts, indicating they "were of particular concern":

- By your self-admission, you called your brother, a plumber, and provided him the address of Judge Cecilia Morris' private residence;

- You stated that your brother is a convicted felon with a history of mental illness;

- You sent CSO Mitchell to escort your brother to Judge Morris' residence, but indicated that the intent was to have CSO Mitchell return to work immediately once he made sure that your brother arrived without getting lost;

- CSO Mitchell did not remain at Judge Morris' residence and returned to the courthouse immediately, which left a convicted felon with a history of mental illness alone in Judge Morris' residence.

(Compl. ¶ 49; ECF No. 24-1 at 2.)  The USMS found that Plaintiff had "acted outside the limits

of [his] authority and placed Judge Morris in potential danger when [he] directed another CSO to

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[2] Page references to ECF No. 24-1, ECF No. 24-3, ECF No. 24-5, ECF No. 24-7, ECF No. 24-9, and ECF No. 24-10 are to page numbers generated by the Court's Electronic Case Filing ("ECF") system.

leave his post to escort a convicted felon with a history of mental illness to a [*sic*] Judge Morris'

private residence," and emphasized:

> In your capacity as a CSO, you did not possess the authority to direct another CSO to do anything without the approval of a supervisor let alone leave the courthouse on private, non-security matters.  In doing so, you also violated the chain of command by not notifying your District Supervisor (DS) or the USMS Contracting Officer's Representative (COR) Judicial Security Inspector of the judge's request for assistance. The contract clearly stated that only the Contracting Officer and the COR have authority over the contract, and your DS is your first line supervisor.
>
> Your actions and extremely poor judgment circumvented the contract's processes and procedures and put the judiciary in danger.  Your conduct undermined the USMS' confidence and trust in your ability to perform effectively as a CSO.

(ECF No. 24-1 at 2-3.)  The letter did not specify the performance standards that USMS believed

Plaintiff violated or state whether Gurley had been part of the USMS's 2012 decision to remove

Plaintiff or what steps he had taken to prepare the letter.  (Compl. ¶ 50.)

On November 3, 2020, Plaintiff wrote to Gurley, stating that he did not believe the

explanation in Gurley's letter was the real reason for his termination or that that explanation

justified his termination.  (ECF No. 24-2 at 2.)  He stated that as far as he knew, neither USMS

nor Akal spoke to Judge Morris, but that she was aware of Plaintiff's brother's criminal record,

had employed him in the past, and had requested that he do the job on the day in question.  (*Id*. at

2-3.)  Plaintiff therefore requested an evidentiary hearing before a jointly-chosen neutral

decision-maker and production of any documents from USMS related to his employment that he

had not previously been given during the course of the lawsuit.  (*Id.* at 4.)

On January 6, 2021, Gurley responded to Plaintiff's letter but did not address his request

for documents.  He wrote:

> The USMS cannot agree to relinquish its authority and responsibility to make determinations about security concerns related to CSOs.  Section H-3(b) of the contract relevant to your removal states that "[t]he [USMS] reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO. . . .  Any

decision to continue a Contractor employee in a CSO capacity will be made solely by the Office of Court Security." The USMS will not abdicate its responsibility in this area.

The USMS, however, grants you the opportunity to be heard and respond to the USMS' removal decision orally, in writing, or both. Although CSOs are not USMS employees, this is the same administrative process that is provided to USMS employees when there is a proposed removal from duty. You may be represented by legal counsel and may submit affidavits or other additional evidence in support of your response. After receiving your response, the Chief of the Office of Court Security will review all relevant information and make a final determination regarding the removal decision.

Please let the USMS know by January 11, 2021 whether and how you intend to respond (i.e., in writing, orally or both).

(ECF No. 24-3 at 2 (alterations in original).) On January 8th, Plaintiff's attorney informed USMS that he wished to respond to its removal decision both orally and in writing. (ECF No. 24-4.) On January 15th, Gurley wrote to Plaintiff asking him to provide any additional written submissions by January 29th, 2021, after which USMS would schedule a conference call during which Plaintiff could present his response orally. (ECF No. 24-5.)

On January 22, 2021, Plaintiff's attorney responded, asking to "clarify the process that USMS is offering" and to obtain information known to USMS "to ensure [his] responses [would] be as helpful as possible." (ECF No. 24-6 at 1.) The questions included: (1) who was the current Chief of the OCS and how long had the individual been in that position; (2) whether the current Chief had any role in the 2012 removal decision and if not, which individuals did; (3) whether the Chief would need to consult with others to reverse USMS's prior decision and if so, with whom; (4) what documents the Chief would be considering in addition to Plaintiff's submissions; (5) whether the Chief would ask Plaintiff questions during the conference call; (6) whether the Chief would speak with witnesses other than Plaintiff and if so, who; and (7) the nature of the pre-removal and post-removal processes afforded to USMS employees. (*Id.* at 1-2.)

Plaintiff's attorney also posed questions about Plaintiff's removal: (1) "What precisely stood out and was of particular concern, and on what basis does Mr. Gurley believe that these facts stood out and were of particular concern to USMS in 2012? Which, if any, of these points was the reason USMS removed Mr. Hauschild in 2012?"; (2) "[D]id USMS interview or otherwise ask Judge Morris if she had asked him to send his brother to her residence on the day in question? If USMS learned that Judge Morris had so authorized Mr. Hauschild, would that change its assessment as to whether he should have been removed?"; (3) "Was USMS aware, at the time it made the removal decision, that Judge Morris had knowledge of Mr. Hauschild's brother's criminal record and that he had received a mental health evaluation?"; (4) "Was USMS aware, at the time it made the removal decision, that Mr. Hauschild's brother had done plumbing work at Judge Morris's residence on previous occasions?"; (5) "Is it USMS's position that it is unsafe for any convicted felon to be present in a judge's residence? In USMS's view, is it relevant whether the felony was violent or nonviolent?"; and (6) "Is it USMS's position that it is unsafe for any individual who has received a mental health evaluation to be present in a judge's residence?" (*Id.* at 3-4.)

On January 25, 2021, USMS responded to the January 22nd letter from Plaintiff's attorney, stating that: (1) the Chief would review all documentation that was included in the administrative record of Plaintiff's case and any additional documents provided by him; (2) thereafter Plaintiff would have the opportunity to make statements during the conference call, where the Chief might ask questions but will not answer any; and (3) no other individuals would be heard during the call but Plaintiff's attorney could provide any relevant witness statements for consideration. (ECF No. 24-7 at 2.) As to counsel's remaining questions, USMS said the August 19th letter spoke for itself and that USMS would not be further responding, adding that if

counsel believed there was information USMS had not adequately considered, Plaintiff could provide that information or context as part of his written and oral responses. (*Id.*)

After being given two additional weeks to provide any documents that he wished to be considered, (*see id.* at 3), on February 8, 2021, Plaintiff submitted an eight-page response to the removal decision, along with a copy of his September 26, 2014 declaration and accompanying exhibits that he filed in the federal litigation, (ECF No. 24-8; Compl. ¶ 57). The letter summarized the procedural history of the matter and argued that the decision to remove him from the CSO program was unfair and arbitrary. (ECF No. 24-8 at 1-8.) He noted that Judge Morris was aware of his brother's issues and nevertheless wanted him to come to her home, that his brother's felony was non-violent, and that his brother was mentally healthy at the time. (*Id.* at 7.) He again requested an evidentiary hearing before a neutral decision-maker. (*Id.* at 8.) On February 12, 2021, USMS informed Plaintiff that it would schedule a conference call with the Chief for the week of March 8, 2021 and that the call would likely last 30 minutes. (Compl. ¶ 58.)

The call ultimately occurred on March 18th, and included Plaintiff, OCS Chief Brandon Pritchard, Plaintiff's attorney, and USMS's counsel. (*Id.* ¶¶ 58-59.) At the beginning of the call, Pritchard said that he had reviewed Plaintiff's written submissions and after hearing from him, would review those submissions again before issuing a written decision. (*Id.* ¶ 59.) Plaintiff and his attorneys spoke for about 15 minutes and nobody asked Plaintiff any questions. (*Id.*)

On April 15, 2021, Pritchard issued a one-page letter upholding Plaintiff's removal, writing, in pertinent part:

> Based on the information at hand, the USMS determined that you acted outside the limits of your authority. In your capacity as a CSO, you did not possess the authority to direct another CSO to leave the courthouse on duty without supervisor approval. You also placed the Judge in a bad situation by allowing your brother, a convicted felon alone in

the judge's residence.  The district also stated that they had lost confidence in you to perform the duties of a CSO due to your actions and extremely poor judgement that circumvented the contract's processes and procedures.

After reviewing all the documents and considering the statements made by you and your attorneys on March 18, 2021, I have determined there is no reason to overturn the decision that was previously made to request your removal from the CSO contract.  Your actions were clearly outside the scope of your authority as a CSO as set forth in the contract and demonstrated extremely poor judgement.  Your District Supervisor and the USMS should have been informed of the situation at the time, so that the USMS could have determined the appropriate action with regards to judicial security.  Instead, you acted unilaterally by making the security decision to [*sic*] directing a CSO to leave his post at the courthouse and [*sic*] in order to take your brother to the judge's residence.  That was not your decision to make.  Therefore, I standby [*sic*] the prior decision to request your removal from the CSO contract.

(ECF No. 24-9 at 2.)  Pritchard did not identify who at the district said they had lost confidence in Plaintiff, when that statement was made, whether the individual(s) had reviewed the materials submitted by Plaintiff, or whether they had spoken with Judge Morris about the incident. (Compl. ¶ 61.)  Nor did he specify which performance standards Plaintiff violated or what processes and procedures he "circumvented."  (*Id*. ¶ 62.)

On September 23, 2021, after this lawsuit was filed, Pritchard wrote a letter to Plaintiff and his attorney to provide clarification "[t]o the extent there [wa]s any ambiguity as to the basis of [his] decision."  (ECF No. 24-10.)  He stated:

My decision accepted as true that your brother had previously done handyman work for Judge Morris, that Judge Morris was aware of your brother's criminal history, and that she asked you to send him to her residence.  But, as I noted, your actions were clearly outside the scope of your authority as a CSO as set forth in the contract and demonstrated extremely poor judgment.  USMS is responsible for ensuring the safety of all federal courts and court employees and CSOs are retained to fulfill that mission.  Your decision to fulfill a request from a judge for personal assistance outside the courthouse that put her in a potentially vulnerable position and left the courthouse short-staffed without first conferring with your District Supervisor so that USMS could determine the appropriate action violated the Performance Standards in the contract and undermined USMS's mission to ensure the safety of courthouse and court employees.

(*Id.*)

**B.  Procedural History**

On September 10, 2021, Plaintiff filed this lawsuit, alleging claims against USMS under the APA, 5 U.S.C. § 500, *et seq.*  (Compl. ¶¶ 63-66.)  On October 15, 2021, the case was reassigned to me as related to Plaintiff's original case.  (*See* ECF Nos. 7, 13.).  On November 8, 2021, the Government requested a pre-motion conference in anticipation of its motion to dismiss, (ECF No. 14), and on November 29, 2021, the Court held that conference and set a briefing schedule, (Minute Entry dated Nov. 29, 2021).  The instant motion followed.  (ECF Nos. 22-26.)

## II.  LEGAL STANDARDS

**A.  Federal Rule of Civil Procedure 12(b)(1)**

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id.*  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Id.*  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).  When a defendant moves to dismiss both for lack of

subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief

can be granted, the Court must address the issue of subject matter jurisdiction first.  *See Rhulen*

*Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a motion to dismiss pursuant to Rule 12(b)(1), "the Court may look to affidavits and

other evidence outside the pleadings to resolve disputed jurisdictional fact issues."  *E. Paralyzed*

*Veterans Ass'n v. Lazarus-Burman Assocs.*, 133 F. Supp. 2d 203, 208 (E.D.N.Y. 2001); *see*

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss

for lack of subject matter jurisdiction under Rule 12(b)(1) a district court . . . may refer to

evidence outside the pleadings.")  A district court may not, however, "'rely on conclusory or

hearsay statements contained in'" the documents outside the pleadings.  *TZ Manor, LLC v.*

*Daines*, 815 F. Supp. 2d 726, 734 (S.D.N.Y. 2011) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*,

386 F.3d 107, 110 (2d Cir. 2004)).

USMS attaches a declaration from counsel attaching:  (1) Gurley's August 19, 2020 letter

to Hauschild; (2) Hauschild's November 3, 2020 letter to Gurley; (3) Gurley's January 6, 2021

letter to Hauschild; (4) Plaintiff attorney's January 8, 2021 email to the USMS; (5) Gurley's

January 15, 2021 letter to Hauschild; (6) Plaintiff attorney's January 22, 2021 letter to USMS;

(7) USMS's January 25, 2021 letter to Hauschild; (8) Hauschild's February 8, 2021 letter to

USMS; (9) Pritchard's April 13, 2021 letter to Hauschild; and (10) Pritchard's September 23,

2021 letter to Hauschild.  (*See* ECF Nos. 24-1, 24-2, 24-3, 24-4, 24-5, 24-6, 24-7, 24-8, 24-9, 24-

10.)  All these documents may be considered on a Rule 12(b)(1) motion.  *See U.S. ex rel. Phipps*

*v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y.2001) ("Where subject

matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such

as affidavits, documents and testimony.")

**B.  Federal Rule of Civil Procedure 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough. And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), *cert.*

*denied*, 212 L. Ed. 2d 764 (U.S. May 2, 2022) (No. 21-1314).

I will consider Defendant's exhibits because they are integral to the Complaint, in that they form the factual basis for most of the allegations in the Complaint and Plaintiff relied on them in framing his allegations.

## III.   DISCUSSION

### A.   Mootness

The mootness doctrine is rooted in the "case or controversy" requirement of Article III of the United States Constitution, which requires that a live controversy exist before a court at all times during the pendency of a litigation. *See DeFunis v. Odegaard*, 416 U.S. 312, 316-17, (1974) (*per curiam*); *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 139-40, 140 n. 2 (2d Cir.1994). Whenever mootness occurs, the court – whether trial, appellate, or Supreme – loses jurisdiction over the suit, and the case must be dismissed. *See Fox*, 42 F.3d at 140. Therefore, "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496 (1969), including when "an

event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Cty. of Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 778 F.3d 412, 416 (2d Cir. 2015).

Plaintiff argues that USMS failed to provide him "with an evidentiary hearing at which he could respond to the evidence against him and confront his accusers." (Compl. ¶ 65.) Relying on my prior decision – in which I said, "[A] full-blown evidentiary hearing is [not] necessarily required. It may turn out, once USMS provides an explanation of the evidence on which it relied, that its decision was based on facts that Plaintiff does not dispute. If the termination decision did not involve the resolution of factual disputes, a hearing would serve no purpose," *Hauschild*, 2018 WL 3014095, at *12 n.7 – USMS argues that now that it has explained that it accepted Plaintiff's version of the facts as true, there are indeed no facts that Plaintiff disputes and therefore a hearing would serve no purpose, (ECF No. 23 ("D's Mem.") at 13-14). If there are no facts in dispute, there is no effectual relief that can be granted to Plaintiff by remanding for an evidentiary hearing, rendering that aspect of Plaintiff's claim moot. *See Mamedov v. Barr*, No. 20-CV-1063, 2021 WL 781743, at *3 (E.D.N.Y. Mar. 1, 2021) (rejecting the government's mootness argument where, on remand, the agency "would be required to independently assess" the applicability of a statutory provision "on [a] full evidentiary record" that may result in a reversal of an earlier administrative decision); *Manguriu v. Lynch*, 794 F.3d 119, 122 (1st Cir. 2015) (reviewing court can find case moot based on supplemented record where pertinent facts are undisputed); *cf. Akimenko v. Mayorkas*, No. 21-CV-3738, 2022 WL 1539519, at *3 (N.D. Cal. May 16, 2022) (case moot where "there is no outstanding duty the court can compel Defendants to perform").

Based on the letters the parties exchanged in 2020 and 2021 on remand, USMS made clear that it terminated Plaintiff because he directed another CSO to leave the courthouse to accompany his brother, a convicted felon with a history of mental illness, to help Judge Morris with a plumbing issue at her home.  It disapproved of these actions because Plaintiff did not have the authority to order another CSO to do anything; his order left the courthouse one officer short; he used official resources for a personal, non-security matter; he did not keep his supervisors informed of what he was doing; and he potentially put the judge at risk.  (*See* ECF No. 24-1 at 2-3; ECF No. 24-9; ECF No. 24-10.)  Pritchard makes clear in his September 23, 2021 letter that in making his decision, he accepted as true that Judge Morris, knowing of Plaintiff's brother's background, wished for him to do the work for her, as he had in the past, but that USMS still believed that Plaintiff acted outside the scope of his authority as a CSO, (ECF No. 24-10):

> USMS is responsible for ensuring the safety of all federal courts and court employees and CSOs are retained to fulfill that mission.  Your decision to fulfill a request from a judge for personal assistance outside the courthouse that put her in a potentially vulnerable position and left the courthouse short-staffed without first conferring with your District Supervisor so that USMS could determine the appropriate action violated the Performance Standards in the contract and undermined USMS's mission to ensure the safety of courthouse and court employees.

(*Id.*)

Plaintiff does not dispute the facts on which USMS relied – namely, that his brother is a convicted felon with a history of mental illness; that he sent his brother to Judge Morris's home; that he directed another CSO to accompany the brother to the home and then return, leaving his brother alone in the judge's house; and that the issue at the home was a personal one unrelated to judicial or court security.  In his opposition, Plaintiff states that an evidentiary is required to address:  (1) whether dispatching his brother to Judge Morris's home put her in a vulnerable position; (2) whether the CSO he sent was "on duty" and sending him left the courthouse short-

staffed; (3) why Pritchard abandoned a previous explanation; and (4) what performance standards, if any, he violated.  (ECF No. 25 ("P's Opp.") at 14-15.)  Plaintiff may well have these outstanding questions, but what he seeks are either explanations rather than facts, or facts the resolution of which is irrelevant.  I address each issue in turn.

First, Plaintiff disputes that having his brother attend to Judge Morris's plumbing issue put her "in a potentially vulnerable position."  (*Id.* at 14.)  But Pritchard makes clear that his decision was not based on whether Judge Morris was *actually* in danger; in fact, he accepted the fact that Plaintiff's brother had done work for the Judge before, she knew of his criminal record and mental health history, and she had asked Plaintiff to send him to her home.  But even so, he determined Plaintiff's "actions were clearly outside the scope of [his] authority as a CSO as set forth in the contract and demonstrated extremely poor judgment."  (ECF No. 24-10.)  This makes clear that regardless of whether Plaintiff thought Judge Morris would be in danger or not, and regardless of whether his brother in fact posed any sort of threat, Plaintiff still did not have the authority to send another CSO to her house, should not have been handling personal non-security-related matters, and should have conferred with his supervisor about the judge's request for help.  Moreover, it seems obvious that having a convicted felon with a history of mental illness alone in a house, even if he has no history of violence, presents a *potential* vulnerability, and that while a judge may decide that she welcomes an individual into her home, it is an entirely different matter for the entity responsible for judicial and courthouse security to put its imprimatur on such a presence.  In short, it is clear that USMS' disapproval of Plaintiff sending his brother to Judge Morris's home did not turn on whether his brother in fact posed any risk. Plaintiff states he wants a hearing to address this issue "so that [he] may more fully understand USMS's basis for believing his actions placed the judge in jeopardy and have a meaningful

opportunity to explain to the decisionmaker why USMS's conclusion is wrong." (P's Opp. at 14.) Plaintiff's statement shows that this request challenges USMS's substantive decision, not the process that he was afforded. That he disagrees with USMS's conclusion does not mean that the facts underlying that conclusion are in dispute. Plaintiff does not dispute that he did have a CSO leave the courthouse to take his brother, who has a criminal record and mental health history, to the Judge's home to assist her with personal issues. With no facts in dispute, Plaintiff's request is based on his dissatisfaction with USMS's conclusion, which is not enough to remand the matter back to the USMS for additional proceedings. *See Bibicheff v. Holder*, 55 F. Supp. 3d 254, 261 (E.D.N.Y. 2014) (case dismissed as moot even though plaintiff was "dissatisfied with the information he received at the conclusion" of an agency review of plaintiff's case).

Second, Plaintiff notes that he informed USMS that CSO Mitchell, the CSO he sent with his brother, was on his meal break at the time, and thus he disputes that Mitchell was "on duty" and that his leaving the courthouse left it short-staffed. (P's Opp. at 14-15.) He therefore wants an evidentiary hearing where he can "hear and rebut USMS's evidence." (*Id.* at 15.) It is plain that whether Mitchell was on break at the moment would have no effect on USMS's evaluation of the incident. In its August 19, 2020 letter, USMS found that Plaintiff acted outside the limits of his authority by directing "another CSO to leave his post to escort a convicted felon," and stated, "In your capacity as a CSO, you did not possess the authority to direct another CSO to do anything without the approval of a supervisor let alone leave the courthouse on private, non-security matters." (ECF No. 24-1 at 2-3.) The February 8, 2021 letter in which Plaintiff mentioned that CSO Mitchell was on a meal break when he accompanied his brother to the Judge's home, (ECF No. 24-8 at 5), was among the documents Pritchard stated he reviewed,

16

(ECF No. 24-9; ECF No. 24-10), and he still determined that Plaintiff "did not possess the authority to direct another CSO to leave the courthouse on duty without supervisor approval," (ECF No. 24-9). Further, it is obvious that sending a CSO away from the courthouse would leave it one CSO short if there were an emergency. Therefore, whether or not CSO Mitchell was on a break, he was supposed to be at the courthouse, not accompanying Plaintiff's brother to an offsite location for "private, non-security matters." (ECF No. 24-1 at 2-3.) Plaintiff does not dispute that he ordered Mitchell to leave, nor does he contend that he conferred with his supervisor before doing so – a failure that USMS repeatedly highlighted as a basis for its decision. (*See* ECF No. 24-1 at 2; ECF No. 24-9; ECF No. 24-10.)

Third, Plaintiff observes that Pritchard did not mention in his September 23, 2021 letter the "lost confidence" and "extremely poor judgment" mentioned in his April 13, 2021 letter, and argues that he therefore is entitled to an evidentiary hearing to "confront his accuser(s) from 'the district' and understand and challenge their bases for believing that he exhibited poor judgment." (P's Opp. at 15.) This argument is close to frivolous. Pritchard wrote his September 23, 2021 letter to provide clarification and address any ambiguity, not to rehash all of the reasons USMS decided to remove Plaintiff. (*See* ECF No. 24-10 ("To the extent there is any ambiguity as to the basis for my decision, I write now to provide clarification. . . . I hope that this further clarification is useful to your understanding of the basis for my decision.").) And even though he did not mention the phrase "lost confidence" again in this letter, he did reiterate that Plaintiff's "actions were clearly outside the scope of [his] authority as a CSO . . . and demonstrated extremely poor judgment," (*id.*), a rationale that USMS stated in its August 19, 2020 letter and that Pritchard emphasized in his April 13, 2021 letter, (*see* ECF No. 24-1 at 2; ECF No. 24-9).

Again, no fact is in dispute here; Plaintiff is just asking for an opportunity to challenge USMS's conclusions.

Fourth, Plaintiff argues USMS has never specified which performance standards have been violated and because of that, he cannot agree that his actions violated any such standards. (P's Opp. at 15.)  But underlying this argument is not a disputed fact, but rather Plaintiff's dissatisfaction with USMS's decision to remove him based on his conduct.  USMS has made clear what conduct was of concern and Plaintiff does not dispute those facts – that he directed CSO Mitchell to leave the courthouse and accompany his brother to Judge Morris's residence.  It does not matter which specific standard this conduct violated; all that matters in determining whether an evidentiary hearing would serve any purpose is whether USMS and Plaintiff agree to the underlying facts, and they both clearly do.

Because Plaintiff has not identified any disputed facts that warrant an evidentiary hearing, there is no effectual relief that this Court can grant Plaintiff.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  Therefore, his claim is moot to the extent he seeks such a hearing.

**B.**     **APA § 706(2)(B) Claim**

Section 702 of the APA provides a general waiver of the federal government's sovereign immunity where an individual seeks judicial review of agency action.  *See* 5 U.S.C. § 702; *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003).  Under § 706(2), a court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity," *id.* § 706(2)(B).  Plaintiff asserts that USMS violated § 706(2)(B) on remand because it failed to provide him with constitutional due process by not providing an explanation of the evidence on which it relied in its 2020 to 2021 letters, not

explaining which performance standards he violated, and not holding a hearing before a neutral

decision-maker.  (Compl. ¶ 65; P's Opp. at 16-18.)

"Due process is flexible and calls for such procedural protections as the particular

situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); *see Weinstein v. Albright*,

261 F.3d 127, 134 (2d Cir. 2001); *see also Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir.

2007) ("There is no rote formula for sufficient protections under the Due Process Clause.").  "At

a minimum, due process requires notice and a hearing" but "when that notice and hearing must

be provided and how intensive the hearing must be is a determination that depends on the

balancing of three interests . . . ."  *Wilson*, 475 F.3d at 178.

> First, the private interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the procedures used, and the
> probative value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural requirement
> would entail.

*Mathews*, 424 U.S. at 335.  In situations involving a tenured public employee facing removal, the

"employee is entitled to oral or written notice of the charges against him, an explanation of the

employer's evidence, and an opportunity to present his side of the story" before he is deprived of

a property interest in continued employment.  *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S.

532, 546 (1985); *accord Zynger v. Dep't of Homeland Sec.*, 370 F. App'x 253, 255 (2d Cir.

2010) (summary order); *Sutera v. Transp. Sec. Admin.*, 708 F. Supp. 2d 304, 316-17 (E.D.N.Y.

2010).

Assuming that Plaintiff is entitled to the same protections as a tenured public employee,

USMS afforded Plaintiff sufficient process.  In my previous decision, I could not tell from the

administrative record "what conduct on Plaintiff's part caused USMS to determine that he should

no longer serve as a CSO, or what evidence it relied on in concluding that that conduct had

occurred," *Hauschild*, 2018 WL 3014095, at *12 n.7, information which the Second Circuit also agreed was missing, *see Atterbury*, 941 F.3d at 63-64 ("Although . . . Hauschild [was] informed of the initial misconduct allegations that gave rise to Akal's investigations, USMS provided no explanation of the reasons for its decision[] that [he] be removed from the CSO program" and "USMS did not indicate whether it based its decision on the substantiated allegation, on any of the unsubstantiated allegations, or both.  And, as Judge Seibel recognized, to the extent that facts were in dispute, some form of hearing was required.").  But on remand the USMS clarified the conduct that led to its decision to remove him and the evidence on which it relied on in arriving at that conclusion.

In its August 19, 2020 letter, USMS identified the evidence:  Plaintiff's admission that, in relation to a personal, non-security matter, he sent his brother, a convicted felon with a history of mental illness, to Judge Morris's home and directed CSO Mitchell to escort his brother there and return to the courthouse after doing so, leaving his brother alone at the judge's home.  (ECF No. 24-1 at 2.)  USMS also explained that based on those facts, it found that he (1) "acted outside the limits of [his] authority" and placed the judge in potential danger; (2) did not have the power to direct another CSO to do anything without the approval of his supervisor, especially leaving the courthouse for a private, non-security matter; and (3) violated the chain of command by not notifying his District Supervisor or the USMS Contracting Officer's Representative Judicial Security Inspector.  (*Id.* at 2-3.)  USMS ultimately concluded that based on these facts that Plaintiff should be removed:  "Your actions and extremely poor judgment circumvented the contract's processes and procedures and put the judiciary in danger.  Your conduct undermined the USMS' confidence and trust in your ability to perform effectively as a CSO."  (*Id.* at 3.) USMS again reiterated its reasoning and clarified the evidence on which it relied on in

Pritchard's April 2021 and September 2021 letters.  (ECF No. 24-9 ("I carefully reviewed all documentation that you presented to the USMS, as well as all the documentation between the USMS and you since August of last year" and "[a]fter reviewing all the documents and considering the statements made by you and your attorneys on March 18, 2021, I have determined that there is no reason to overturn the decision."); ECF No. 24-10 ("I noted that I carefully reviewed all documentation that you presented to the USMS, as well as all the documentation between the USMS and you since August of last year.  I also noted that after reviewing all the documents and considering the statements made by you and your attorneys during the March 18, 2021 hearing, I determined that there is no reason to overturn the decision.").)  As a result of these communications, Plaintiff cannot seriously contend that he does not understand on what conduct USMS relied in directing his removal.

USMS also gave Plaintiff ample opportunities to be heard.  In his November 3, 2020 response, Plaintiff did not dispute any of the facts USMS outlined; he only provided an explanation of his actions and disagreed with USMS's conclusion.  (ECF No. 24-2 at 1-3.)  In its January 6, 2021 letter, USMS informed Plaintiff that he would have an opportunity to be heard and respond to the removal decision, orally, in writing, or both.  (ECF No. 24-3 at 2.)  According to Defendant, this is the same administrative process offered to tenured employees facing removal.  (D's Mem. at 18.)  Plaintiff subsequently informed USMS of his intention to respond to the decision orally and in writing, (ECF No. 24-4), and USMS asked for additional written submissions, (ECF No. 24-5).  Plaintiff responded, outlining a series of questions as to the process being afforded and as to his removal.  (ECF No. 24-6 at 1-4.)  USMS responded to Plaintiff's questions about the process and, as to his additional questions, noted that the August 19, 2020 letter addressed the reasons for his removal but that he could provide additional written

or oral responses addressing issues he though USMS has not adequately considered.  (ECF No. 24-7 at 2.)  Plaintiff then submitted an eight-page letter, along with his previous declaration and exhibits, where he again did not dispute that he engaged in the conduct USMS outlined in its August 19th letter but argued the removal decision was arbitrary and capricious and should be overturned.  (ECF No. 24-8 at 8.)  After having the opportunity to respond in writing, Plaintiff also participated in an oral hearing at which he had the opportunity to provide Pritchard with additional evidence and argument.  (Compl. ¶ 59.)

USMS plainly has complied with my and the Circuit's previous decisions by describing the conduct and evidence that led to its decision to remove Plaintiff.  That Plaintiff disagrees that USMS's stated reasons justify his termination and thinks those reasons are pretextual (for some other motive that he does not specify) does not render the process insufficient; § 706(2)(B) does not grant Plaintiff substantive review of an agency decision, just an opportunity to set aside agency action that runs counter to constitutional process.  I have already found that both sides have important interests at stake, *see Hauschild*, 2018 WL 3014095, at *12, and the risk of erroneous decision making has been addressed by USMS's clear explanation in multiple communications of the conduct on which it relied and the (undisputed) evidence supporting its conclusion that that conduct occurred, and by Plaintiff having multiple opportunities to present his side of the story.  The process provided was sufficient.  *See Zynger*, 370 F. App'x at 255.

Plaintiff contends that the process was insufficient because USMS never specified which performance standard(s) he violated.  (P's Opp. at 12.)  But USMS was not required to specify a particular performance standard, as it has full discretion to remove Plaintiff for any reason, which I concluded in my June 15, 2018 decision in connection with § 706(2)(A).  *See Hauschild*, 2018 WL 3014095, at *6 n.2.  He points to no authority for the proposition that USMS cannot

remove a CSO except for violation of a written performance standard that it identifies for the CSO.  Despite not knowing exactly which performance standard he may have violated, Plaintiff was still informed what conduct was at issue, and was able to address whether or not that conduct warranted removal.  Tying that conduct to a particular performance standard was not necessary to ensure adequate process was provided to Plaintiff.

Plaintiff also argues that he is entitled to a hearing by a neutral decision-maker, as opposed to a USMS employee such as Pritchard.  (P's Opp. at 16-18.)  Plaintiff relies on cases where employees were entitled to that protection because their employer could only fire them for cause.  *See, e.g.*, *Dwyer v. Regan*, 777 F.2d 825, 830 (2d Cir. 1985); *Locurto v. Safir*, 264 F.3d 154, 171-72 (2d Cir. 2001); *Long v. Suffolk Cnty. Police Dep't Cnty. of Suffolk*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006).  I have previously found that pursuant to the applicable collective bargaining agreement ("CBA"), Akal could not discipline or terminate a CSO without just cause. and that "removal by USMS is not [exempted] from the just cause requirement," *Hauschild*, 2018 WL 3014095, at *10, which is why Plaintiff had a property right in his employment entitling him to due process, *see id.*; *Atterbury*, 941 F.3d at 63.  But that conclusion did not purport to place any limitation on USMS's ability to remove individuals from the CSO program, and thus the cases cite by Plaintiff are not instructive, as they do not address situations where, as here, the employer may be bound to the CBA but the agency contracting with the employer retains unfettered discretion to remove individual employees from its program.  *See Hauschild*, 2018 WL 3014095, at *6.  Plaintiff points to no case law supporting the proposition that where the removal decision is committed to an agency by law, the employee of the contracting entity has a right to a neutral decision-maker.

Moreover, even if a CSO could be entitled to a neutral decision-maker when the agency acts in bad faith, *see Dwyer*, 777 F.2d at 831, Plaintiff's claim in that regard is conclusory. He provides no facts supporting his assertion that USMS acted in bad faith; he relies only on the allegations that because Pritchard was a USMS employee, USMS conducted "serial investigations" into him, and he received "shifting explanations" about his removal. (P's Opp. at 16.) But none of these allegations support a finding of bad faith or pretext. First, besides the fact that Pritchard works for USMS, Plaintiff does not allege or present any support showing that Pritchard himself was biased. Further, although USMS did have Plaintiff investigated twice, both times followed its receipt of allegations about him, (Compl. ¶¶ 26, 35, 39-40); it did not baselessly go after Plaintiff. That the allegations were anonymous and Plaintiff presumes they came from co-workers who "harbored animosity" toward Plaintiff also does not render the investigations pretextual. (*Id.* ¶ 40.) The point of the investigations was for Akal and USMS to determine the veracity of complaints. That only one of approximately a dozen was upheld undermines any argument that USMS was acting in bad faith. Finally, Plaintiff's argument that USMS provided "shifting explanations," (P's Opp. at 16), is, as discussed above, meritless. Pritchard plainly explained the basis of his decision multiple times and Plaintiff simply disagrees with USMS's decision. A difference of opinion regarding USMS's exercise of judgment hardly supports an allegation of bad faith.

Therefore, Plaintiff's APA § 706(2)(B) claim is dismissed.

**C.    Plaintiff's Remaining Claims**

Defendant moves to dismiss Plaintiff's APA § 706(2)(D) claim and also argues Plaintiff is not entitled to reinstatement or lost wages as a matter of law. (D's Mem. at 21-22.) Plaintiff fails to address either of these arguments. Therefore, these claims are dismissed as abandoned.

*See Horsting v. St. John's Riverside Hosp.*, No. 17-CV-3230, 2018 WL 1918617, at *6

(S.D.N.Y. Apr. 18, 2018) ("At the motion to dismiss stage, where review is limited to the

pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support

of dismissing that claim."); *Johnson v. City of N.Y.*, No. 15-CV-8195, 2017 WL 2312924, at *17

(S.D.N.Y. May 26, 2017) ("By failing to address Defendants' arguments in support of dismissing

this claim, it is deemed withdrawn or dismissed as abandoned."); *Brandon v. City of N.Y.*, 705 F.

Supp. 2d 261, 268 (S.D.N.Y. 2010) (claims abandoned where Plaintiff "did not raise any

arguments opposing Defendants' motion regarding these two claims") (collecting cases); *Bonilla

v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009)

(claims deemed abandoned and dismissed as a matter of law where defendants raised three

arguments for dismissal of those claims and plaintiff responded to only one).

**D.    <u>Leave to Amend</u>**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not asked to amend or otherwise suggested that he is in possession of facts

that would cure the deficiencies identified in this opinion.  *See TechnoMarine SA v. Giftports,

Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff

fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop

v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with

prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Bruno v. Metro. Transp. Auth.*, 344 F. App'x 634, 636 (2d Cir. 2009) (district court not required to grant leave to amend *sua sponte*); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 22), and close the case.

**SO ORDERED.**

Dated:  March 8, 2023
        White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.